UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
TONY TELLO, *on behalf of himself and all*
*other persons similarly situated*,

                                      Plaintiffs,


              -against-

                                                    **MEMORANDUM AND ORDER**
A.N.G. DINER CORP., d/b/a SILVER SPOON              17 CV 749 (RRM) (CLP)
DINER, HALKIOS RESTAURANT CORP.
d/b/a SILVER SPOON DINER, XIOTIS REST.
CORP. d/b/a SILVER SPOON DINER,
GEORGE RAKITZIS, NICK RAKITZIS, &
ANNA MAIDIOTIS,

                                      Defendants.
------------------------------------------------------------ X
POLLAK, United States Magistrate Judge:

        On February 9, 2017, plaintiff Tony Tello, on behalf of himself and all other persons

similarly situated, filed this action against defendants A.N.G. Diner Corp. d/b/a Silver Spoon

Diner, Halkios Restaurant Corp. d/b/a Silver Spoon Diner, Xiotis Restaurant Corp. d/b/a Silver

Spoon Diner (collectively, "Silver Spoon"), George Rakitzis, Nick Rakitzis, and Anna Maidiotis

(collectively with Silver Spoon, "defendants"), seeking unpaid overtime wages, under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL")

§§ 650 et seq., liquidated damages, and compensation for defendants' violation of the New York

Wage Theft Prevention Act ("WTPA").

        Currently before the Court is plaintiff's motion for: (1) conditional certification of the

FLSA claims as a collective action, pursuant to 29 U.S.C. § 216(b); (2) authorization to send

notice of this FLSA action to the Collective Action Members, including a consent form (or opt-in

form) as authorized by the FLSA; (3) approval of the proposed FLSA notice and consent form

1

(see Prop. Notice;[1] Prop. Consent[2]); (4) an Order requiring defendant to produce the names, and last known mailing addresses, for all Collective Action Members;[3] and (5) an Order requiring defendant to post the Notice and Consent forms at the restaurant. (Pl.'s Mem.[4] at 1-2, 10-11, 12).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on behalf of all similarly situated current and former employees, including chef, dishwasher, waiter or runner, who were employed by the defendant at any time from July 14, 2014 to July 14, 2017, the date the motion for conditional certification was filed. (Pl.'s Mem. at 1). Plaintiff alleges that defendants A.N.G. Diner Corp., Halkios Restaurant Corp. and Xiotis Restaurant Corp., all doing business as "Silver Spoon Diner," are New York

---

[1] Citations to "Prop. Notice" refer to the Proposed Collective Action Notice attached as Exhibit C to the Declaration of David Stein in Support of Plaintiff's Motion for Collective Action Certification, ECF No. 28-3.

[2] Citations to "Prop. Consent" refer to the Proposed Opt-In Form attached as Exhibit D to the Declaration of David Stein in Support of Plaintiff's Motion for Collective Action Certification, ECF No. 28-4.

[3] Plaintiff describes "Collective Action Members" as "[a]ll persons who are or were employed by defendants in the United States at any time since February 3, 2014 to the entry of judgment in this case, and who were not paid overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per week" or "current and former employees . . . employed by [defendants] from July 14, 2014 to the date of [the motion for conditional certification" or "current and former similarly situated person who worked for [defendants] in the last three years [measured from the date of the Notice]." (Compare Compl. ¶ 16, with Pl.'s Mem. at 1, and with Prop. Notice at 1; see discussion infra at 19-22). The Complaint also contains allegations that seek to recover on behalf of a class under Rule 23. (See Compl. ¶ 27). The Court does not consider those allegations at this time because plaintiff has not requested class certification.

[4] Citations to "Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiff's Motion to Conditionally Certify the Matter as a Collective Action, filed on July 14, 2017, ECF No. 27.

corporations with their principal place of business located at 58-21 Junction Boulevard, Elmhurst, New York. (Compl.[5] ¶¶ 5, 7, 11). It is further alleged that defendants George Rakitzis and Nick Rakitzis are owners or part owners and principals of Silver Spoon, with the power to hire and fire employees, set wages and schedules and maintain the company's records. (Id. ¶¶ 16-17, 18-19). Similarly, it is alleged that defendant Anna Maidiotis is also an owner or part owner and principal of the restaurant, involved in the day-to-day operations with the power to hire and fire employees, and set their wages and schedules. (Compl. ¶¶ 20-21).

According to the Complaint, plaintiff Tony Tello was employed by the defendants from approximately May 2003 until September 2016. (Id. ¶ 41). For the last six years, Tello was employed as a counter person, acting as cashier, taking phone orders, and arranging for and packing delivery orders. (Id. ¶ 42). According to Mr. Tello, for the past three years, he split his time working the counter and assisting in the kitchen preparing food. (Id. ¶ 43).

Plaintiff alleges that, during the period of his employment with defendants, he "regularly" worked six days a week. (Id. ¶ 46). When he worked at the counter, Mr. Tello worked from 6:00 a.m. to 4:00 p.m., for approximately 9.5 hours, after accounting for a half hour meal break. (Id. ¶ 47). On days when he worked in the kitchen, he worked from 6:00 a.m. to 3:30 p.m. or 9 hours per day after taking into account his half hour meal break. (Id. ¶ 48). According to the Complaint, plaintiff worked on average 57 hours per week when he worked exclusively at the counter and 55.5 hours when he split his time between the counter and the kitchen. (Id. ¶ 49).

Plaintiff claims that defendants did not provide a time clock or other method to track the hours worked. (Id. ¶ 50). When he worked the counter, plaintiff would punch in a code in the

---

[5]Citations to "Compl." refer to the Complaint, filed on February 9, 2017, ECF No. 1.

computer at the start of the day but he did not punch out at the end of his shift, nor did he punch in on the days that he was working in the kitchen.  (Id.)  Plaintiff claims that by 2011, he was paid a weekly salary of $480 per week.  (Id. ¶¶ 51-52).  That continued until three years prior to the filing of the Complaint when plaintiff began working part time in the kitchen and his salary rose to $575 per week  (Id. ¶ 53).  Plaintiff alleges that he received these same weekly amounts regardless of the number of hours worked.  (Id. ¶ 54).  According to the Complaint, plaintiff was paid in cash and, until three years prior to the filing of the Complaint, he never received any paystubs or wage statements containing the information required by New York law.  (Id. ¶¶ 58, 59).  Plaintiff alleges that the Department of Labor investigated Silver Spoon's labor practices and thereafter, plaintiff began receiving pay stubs, but the information contained on them "was completely fictional; neither the hours nor the pay listed w[as] accurate" and the forms did not contain all of the required information.  (Id. ¶¶ 60-64).

Plaintiff alleges that there are other employees in positions at the restaurant that require little skill, and who have worked more than 40 hours per week without receiving proper overtime and spread of hours pay as required by NYLL.  (Id. ¶¶ 66-67).  It is further alleged that these individuals also did not receive the proper wage notices or weekly wage statements.  (Id. ¶¶ 68, 69).

Following the filing of the Complaint on February 9, 2017, defendants filed an answer on February 21, 2017.  On July 14, 2017, plaintiff filed this motion to certify the FLSA Collective Action and defendants filed their opposition to the motion on September 1, 2017.  In their opposition papers, defendants raise several objections to plaintiff's motion.  (See Defs.' Mem.[6]).

---

[6] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Class Certification of a Collective Action Pursuant to the Fair Labor Standards Act, filed on September 1, 2017, ECF No. 37.

Defendants contend that: 1) plaintiff's motion for conditional certification should be denied on the grounds that plaintiff has failed to adequately allege that defendants violated the overtime requirements of the FLSA; and 2) plaintiff has not established that he was similarly situated to the employees sought to be included in the class. (Id. at 7). In addition, defendants raise certain deficiencies with respect to plaintiff's proposed notice; and they object to the request to post the Notice in the restaurant.

On September 16, 2017, plaintiff filed a reply in support of his motion for conditional certification, arguing that he had satisfied the minimal "modest factual showing" required to demonstrate that plaintiff is similarly situated to the potential opt-in class members and that defendants' complaints about the scope of the class and plaintiff's ability to serve as a representative are misplaced. (Pl.'s Reply[7] at 1, 6).

For the reasons set forth below, the Court finds that plaintiff has made out the minimal factual showing required to meet the legally applicable standard for collective action certification under the FLSA, and therefore, the Court grants conditional certification of the collective action. The Court further approves plaintiff's proposed Notice and Consent forms with the modifications discussed herein. Defendant is Ordered to post copies of the Notice at the Silver Spoon Diner and to provide plaintiff with a list of those employees who were employed at any time during the three (3) years preceding the filing of the Complaint, as well as their telephone numbers, addresses, and e-mail addresses.

---

[7] Citations to "Pl.'s Reply" refer to the Reply Memorandum of Law of Plaintiff in Support of Plaintiff's Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to Be Issued to All Persons Similarly Situated, dated September 14, 2017, ECF No. 39.

A.  Collective Action Certification Under FLSA § 216(b)

   1.  Legal Standard

Under the FLSA, employers are required to compensate covered employees for all work performed, including overtime, in order to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. §§ 202(a), 207(a)(1); see also Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 522 (S.D.N.Y. 2015) (quoting Reich v. New York City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995)) (explaining that "[t]he purpose of the FLSA . . . was to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act'").  Pursuant to Section 216(b) of the FLSA, an employee may bring an action to "recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions."  Cano v. Four M Food Corp., No. 08 CV 3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb. 3, 2009) (citation omitted).

Under the statute, an employee may bring a collective action "for and on behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  However, unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, a collective action brought under the FLSA may be brought only on behalf of those employees who affirmatively "opt in" by giving consent in writing to become a party to the action.  Patton v.Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005); see also Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010) (noting "[u]nlike in traditional 'class actions' . . . plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by the judgment") (citations omitted).

Courts use a two-step analysis to determine whether certification of a collective action under the FLSA is appropriate. <u>Valerio v. RNC Indus.</u>, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (citing <u>Myers v. Hertz Corp.</u>, 624 F.3d at 544-45). The first step requires the court to determine whether to send notice to individuals who are "similarly situated" to the named plaintiff "with respect to whether a FLSA violation has occurred," such that those individuals may opt in to the collective action. <u>Ahmed v. T.J. Maxx Corp.</u>, 103 F. Supp. 3d 343, 346 (E.D.N.Y. 2015) (citing <u>Myers v. Hertz Corp.</u>, 624 F.3d at 555). The court may consider "the pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members" in determining whether the potential opt-in plaintiffs are similarly situated to the named plaintiffs. <u>Id.</u> (quoting <u>Jeong Woo Kim v. 511 E. 5th St., LLC</u>, 985 F. Supp. 2d 439, 445 (S.D.N.Y. 2013)). At the collective certification stage, the court does not resolve factual disputes or make credibility determinations. <u>Id.</u> at 34 (collecting cases). If plaintiffs meet this "fairly lenient" standard, the court will grant conditional certification and authorize notice to potential plaintiffs. <u>Alvarez v. IBM Rests. Inc.</u>, 839 F. Supp. 2d 580, 584 (E.D.N.Y. 2012).

Although the statute has no specific provision for issuing such notice, the Supreme Court in <u>Hoffman-LaRoche Inc. v. Sperling</u> held that it was appropriate for courts to authorize such notice under the FLSA in order to serve the "broad remedial goal" of the Act. 493 U.S. 165, 171-74 (1989); <u>see also</u> <u>Sosa v. Caz-59 Express, Inc.</u>, No. 13 CV 4826, 2014 WL 5471256, at *2 (E.D.N.Y. May 28, 2014), <u>report and recommendation adopted</u>, 2014 WL 5471456 (E.D.N.Y. Oct. 28, 2014) (explaining that a district court "has the power to order that notice be given to other potential members of the plaintiff class under the 'opt-in' provision of the [FLSA]") (quoting <u>Braunstein v. E. Photographic Labs., Inc.</u>, 600 F.2d 335, 335-36 (2d Cir. 1978)).

The second step of the court's analysis takes place after discovery, when the court looks at the record again and "makes a factual finding regarding the similarly situated requirement; if the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified." Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 100 (E.D.N.Y. 2014) (quoting Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2014)).

2. Analysis

Plaintiff contends that the allegations in the pleadings and sworn statements from plaintiff Tello and opt-in plaintiff Salvador Martinez make the "modest factual showing" that plaintiffs and the putative party plaintiffs are similarly situated because they have similar duties, similar hours, and are subject to similar illegal pay practices. (Pl.'s Mem. at 8-9). Plaintiff therefore argues that conditional certification is warranted. (Id.)

In opposing certification, defendants argue that first, plaintiff Tello fails to allege that he was not properly paid overtime under the FLSA (Defs.' Mem. at 9-10); and second, that plaintiff has failed to show that there are similarly situated individuals who were subject to the same unlawful policies. (Id. at 10-11).

a. Whether Plaintiff Has Adequately Alleged an Overtime Violation

Defendants concede that plaintiff was paid a flat weekly amount every week, but they contend it was not a "salary;" rather, they insist that he was consistently paid the same amount because he worked the same schedule and same number of hours every week. (Id. at 9). Thus, defendants point to certain sample pay stubs attached to their submission showing that plaintiff was paid $521 for each of four consecutive weeks because he worked 51 hours per week. (Id.) To demonstrate further that his hours and schedule were the same from week to week,

defendants cite plaintiff's testimony that he generally worked the early shift from 6:00 a.m. to 4:00 p.m. and received the same amount per week; such testimony, they contend, demonstrates that there is no support for plaintiff's claim that he should have been paid overtime.  (Id. (citing T. Tello Decl.[8] ¶¶ 9-10; Tello Tr.[9] at 76)).  Defendants further note that in his deposition, Mr. Tello  testified that when he worked less hours, he received less pay, and in fact, he did not know if he was paid overtime while working at the Silver Spoon.  (Id. at 10).

Defendants also attempt to counter the sufficiency of plaintiff's allegations by submitting the affidavit of Mr. Tello's brother, Francisco G. Tello.  He states that he has worked as a counter person for 15 years at The Silver Spoon, and he claims that he was paid an hourly rate and received overtime wages for all hours over 40 that he worked in a week.  (F. Tello Decl.[10] ¶¶ 2, 4, 5).

In response, plaintiff notes first that defendants misstate his testimony that if he worked less, he was paid less.  According to plaintiff, his testimony actually was that if he missed a day and did not work, he would be paid less than his weekly salary.  (Pl.'s Reply at 2 n.2 (citing Tello Tr. at 107)).  Plaintiff further takes issue with defendants' assertion that plaintiff received the same amount of pay every week because his schedule was consistent each week.  (Id.) Plaintiff states in his Declaration that he worked six days a week, either a 10 hour shift, minus a half hour lunch break, or a 9.5 hour shift, minus a half hour lunch break.  (Tello Decl. ¶¶ 9-10). Thus, it is not clear that his schedule was the same from week to week.  Even defendants' own

---

[8] Citations to "T. Tello Decl." refer to the Declaration of Tony Tello, dated July 13, 2017, ECF No. 28-1.

[9] Citations to "Tello Tr." refer to the deposition transcript of plaintiff Tello, attached as Ex. B to Defs.' Mem., ECF No. 37-2.

[10] Citations to "F. Tello Decl." refer to the Declaration of Francisco G. Tello, dated August 31, 2017, attached as Ex. C to Defs.' Mem., ECF No. 37-3.

paystubs show different numbers of hours worked in different weeks:  some show Mr. Tello working 54 hours, others 51 and 46 hours in a particular week.  (Id.)  If that is correct, paying him the same amount every week regardless of the number of hours worked shown on the paystubs belies the defendants' claim that he worked the same number of hours every week and that he was paid an hourly rate for every hour worked.

Moreover, as plaintiff points out, Mr. Tello denies that his paystubs as provided by defendants were ever accurate, even after the defendants started issuing paystubs.  (Id. ¶ 16).  He states that he only received a fixed weekly amount in cash and, until the Department of Labor Investigation occurred, he never received any pay stubs.  (Id. ¶¶ 13-16).  Finally, plaintiff further notes that nowhere in their papers do defendants claim that there was an overtime component incorporated into the weekly salary payment.  Even if defendants had made that argument, it is defendants' burden to show that such an agreement was made explicit to plaintiff and that he agreed to it.  There has been no such showing in the record before this Court.

Here, the Complaint clearly alleges that Mr. Tello and other employees received flat weekly salaries and did not get paid overtime for the hours worked over 40 in a given week. (Compl. ¶¶ 51-54, 57; T. Tello Decl. ¶ 17).  Although defendants ask this Court to consider Francisco Tello's Declaration and several of plaintiff's pay stubs as evidence that plaintiff's claim is unfounded, the law in this Circuit is clear that the proper inquiry at this stage is whether *plaintiff* has made the requisite showing, without reference to what defendant may have sought to inject into the record.  Accordingly, the court in Benavides v. Serenity Spa NY Inc. held that "[d]eclarations submitted by employers of current employees are regularly disregarded in the context of conditional certification of a collective action, both because of the chance of coercion by the employer, but also because the evidentiary burden is relatively low."  No. 15 CV 9189,

2017 WL 3835880, at *5 (S.D.N.Y. Sep. 1, 2017); see also Bijoux v, Amerigroup N.Y., LLC,

No. 14 CV 3891, 2015 WL 4505835, at *13 (E.D.N.Y. July 23, 2015) (explaining that "the focus

of the court's inquiry is not on the defendants' evidence, but on whether the plaintiffs have made

their requisite showing"); Aros v. United Rentals, 296 F.R.D.176, 180 (D. Conn. 2010).

    Courts in this Circuit have ordered conditional certification of a collective action where

the employees allege failure to pay overtime wages. See, e.g., Poplawski v. Metroplex on the

Atlantic, LLC, No. 11 CV 3765, 2012 U.S. Dist. LEXIS 46408, at *12 (E.D.N.Y. Apr. 2, 2012);

Salomon v. Adderley Indus., Inc., 847 F. Supp. 2d 561, 564–65 (S.D.N.Y. 2012).  While plaintiff

may not be able to discern how his wages were calculated by defendants, he has alleged—and

indeed, defendants' own paperwork suggests that he is correct in stating—that he worked

different hours each week.  If, as defendants claim, he was paid on an hourly basis, it is unclear

to the Court how defendants justify the payment of the same amount of money even in weeks

when his pay stubs reflect a different hours number of hours worked.[11]

    Accordingly, the Court rejects defendants' invitation to weigh the competing declarations

of the employees and determine the merits of this case at this time, and finds that plaintiff has

adequately alleged violations of the overtime provisions of the FLSA sufficient to survive a

motion to dismiss.  Thus, the Court proceeds to analyze defendants' argument that plaintiff has

failed to meet his "modest burden" for conditional certification of his FLSA collective action.

---

[11] The Court notes that Tony Tello's statements as to how his wages were calculated are corroborated by the Declaration of Salvador Martinez. (See discussion infra at 12-13).

b. <u>Whether Plaintiff Is Similarly Situated to Other Employees</u>

Plaintiff claims that he has sufficiently established that "the existence of a 'factual nexus between the [named plaintiff's] situation and the situation of the other current and former [employees].'" (Pl.'s Mem. at 6 (quoting <u>Hoffman v. Sbarro, Inc.</u>, 982 F. Supp. 249, 261 (S.D.N.Y. 1997))). In this case, Mr. Tello has presented his Declaration stating that he worked "in excess of 50 hours per week, but rather than being paid regular pay plus an overtime premium for all of the hours in excess of forty, he was paid a flat cash salary that did not contain any overtime premium." (<u>Id.</u> at 8; T. Tello Decl. ¶¶ 10-17). He states in his Declaration, that over the years that he worked for the Silver Spoon, he observed other employees and spoke to other counter workers, who he claims worked the same shifts as him, six or seven days a week. (Tello Decl. ¶¶ 19, 20). He further represents that he never received a notice at the time of hiring explaining how he was going to be paid, and, until the Department of Labor investigation, he never received any other notice explaining his pay. (<u>Id.</u> ¶ 22). He further states that he never saw any other employees being asked to sign such a notice, and he names as examples several counter workers, including Nacho Robles, Rene Cisneros, Alex Garcia, Jovanny Tello, and Hector Martinez, along with certain kitchen workers, including Jose Guadalupe Lopez, Santiago Vasquez, Rene Cisneros, Salvator Martinez, and "Benny," "Leo," and "Guillermo." (<u>Id.</u> ¶¶ 22-22).

In further support of his claim of overtime violations, plaintiff has also submitted the Declaration of opt-in plaintiff, Salvador Martinez, who states that he worked at the Silver Spoon from 2009 until March 11, 2016. (Martinez Decl. ¶¶ 5, 7). Mr. Martinez asserts that he worked first as a delivery man and later as a "pizza man," during which time he also worked the counter. (<u>Id.</u> ¶¶ 8-9). According to Mr. Martinez, for the first three years at the Silver Spoon, he worked six days a week from 6:00 a.m. to 4:00 p.m. on Tuesday through Saturday, and from 11:00 a.m.

to 10:00 p.m. on Sunday, with a resulting total of 61 hours per week. (Id. ¶¶ 10-11). During the time that he worked as a pizza man, Martinez worked Mondays from 1:00 p.m. to 11:00 p.m., Tuesdays, Thursdays and Saturdays from 11:00 a.m. to 11:00 p.m., Wednesdays and Fridays from 8:00 a.m. to 4:00 p.m. (Id. ¶ 12). In total, he was working approximately 62 hours per week. (Id. ¶ 13). Like Tello, Martinez claims he was paid a flat weekly salary regardless of the number of hours worked, except that if he missed a day, they deducted from his pay. (Id. ¶ 15). He confirms Mr. Tello's statements that there was no time clock or time sheet and that defendants not only did not track the employees' times, but until the Department of Labor investigation in 2014, he never received any pay stubs. (Id. ¶¶ 14, 18, 19). Mr. Martinez also states that he now realizes that the pay stubs he did receive did not accurately reflect the number of hours he worked, nor do they properly reflect the amount of money that he was paid. (Id. ¶ 19).

Mr. Martinez states that during the time he worked at the Silver Spoon, he observed and spoke to other employees. (Id. ¶ 21). He states that the delivery people all worked similar schedules to his and were paid around $175 or $200 per week, with the exception of one employee who had been there for 20 years and was paid $300 per week. (Id. ¶ 22). As for the other pizza man, Mr. Martinez represents that he was paid $500 per week, just like Martinez, and they both received a raise to $525 per week, but worked over 60 hours per week. (Id. ¶ 23). Mr. Martinez confirms Mr. Tello's statement, indicating that he observed the counter people working 10 hour days, five to six days per week. (Id. ¶ 24). Although he does not name specific individuals, Mr. Martinez represents that he "saw, and/or they told [him], that everyone was paid a weekly salary, in cash, with no overtime pay, and none of us got paystubs until [he] did, a few

years ago. " (Id. ¶ 26).  Finally, he states he never saw any other employee receive a pay notice to sign.  (Id. ¶ 27).

Defendant argues that plaintiff has failed to establish that there are similarly situated individuals who are subject to the same alleged unlawful policy and argues that plaintiff cannot rely on "'unsupported assertions' to make the factual showing necessary to achieve conditional certification at this stage."  (Defs.' Mem. at 10 (quoting Ali v. New York City Health & Hosps. Corp., No. 11 CV 6393, 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013)).  Defendants note that the Tello Declaration references the Department of Labor investigation and argue that "[i]t appears that Tello came to the conclusion that the conducting of an investigation by the Department of Labor necessarily meant that the diner must have engaged in some unlawful behavior."  (Defs.' Mem. at 11).  To the extent that Tello's Declaration names certain employees and makes statements regarding the hours worked by these employees, defendants contend that there "is not even a shred of evidence in Tello's declaration that such employees were paid on a 'salary' basis or were denied overtime."  (Id. at 12).  Defendants further point out that in his deposition, Mr. Tello testified that he never discussed pay with any of his co-workers; all he knew was they received an envelope weekly.  (Id. (citing Tello Tr. at 37, 89-91, 94-96, 152)).

As for the Declaration of Mr. Martinez, defendants urge the Court to disregard his Declaration because he was never added as a named party; he simply filed a Consent to Join form, which defendants argue they can challenge at the close of discovery.  (Id. at 13 (citing Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).  Defendants contend that because the named plaintiff must show that he is similarly situated to other employees, whether other "opt-in Plaintiffs are similarly situated to each other is immaterial, if they are not similarly-situated [sic] to the Named Plaintiff."  (Id.)  In the alternative, defendants urge the Court to discount

Martinez's Declaration because it, like that of Mr. Tello, is conclusory and fails to establish that defendants violated the law.  (Id. at 14).

The term "similarly situated," although not defined in the statute, has been interpreted to require only a "modest factual showing sufficient to demonstrate that [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d at 346 (quoting Myers v. Hertz Corp., 624 F.3d at 555).  Courts do not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 58 (E.D.N.Y. 2011) (quoting Sobczak v. AWL Industries, Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)).  This determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiffs.  Id. (citing cases); Hallissey v. America Online, Inc., No. 99 CV 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) (holding that "[p]laintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members").  However, "the required 'modest factual showing' necessary for conditional certification 'cannot be satisfied simply by unsupported assertions.'"  Cowell v. Utopia Home Care, Inc., No. 14 CV 736, 2016 WL 4186976, at *5 (E.D.N.Y. Aug. 8, 2016) (quoting Myers v. Hertz Corp., 624 F.3d at 555).

A plaintiff must present "actual evidence of a factual nexus" between himself and potential opt-in plaintiffs to obtain conditional certification.  Id. (quoting Gu v. T.C. Chikurin, Inc., No. 13 CV 2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)); see also Sexton v. Franklin First Fin., Ltd., No. 08 CV 4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (explaining that "nothing more than substantial allegations that the putative class members were

together the victims of a single decision, policy or plan is required"). Thus, "[c]ourts will certify broad classes when there is some showing that all members of the putative class performed the same duties, or that the employer had uniform company-wide employment practices." Cowell v. Utopia Home Care, Inc., 2016 WL 4186976, at *5 (quoting Vasquez v. Vitamin Shoppe Indus., Inc., No. 10 CV 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011)).

Plaintiff argues that the Complaint and the Declarations suffice to satisfy the "modest" factual burden of showing that he and Martinez are similarly situated to the other putative collective plaintiffs. (Pl.'s Mem. at 10-12). As plaintiff observes, even though defendants argue that plaintiff's affidavit contains "ambiguous and speculative allegations," defendants do not identify what specific statements they are referring to, instead focusing on the statements regarding the Department of Labor investigation, and inferring that Mr. Tello believes there were violations simply because of the investigation. (Pl.'s Reply at 3). As plaintiff points out, however, Mr. Tello claims that when the Department of Labor investigator came to interview employees, he was told to hide and never spoke to the investigator. (T. Tello Decl. ¶ 15). Not only did this lead him to believe that the defendants were in violation of the law, but more importantly, even after the investigation, Mr. Tello claims that defendants continued to engage in their same pay practices, with the only change being the fictitious paystubs. (Pl.'s Reply at 4). Even if defendants were correct that the investigation by the Department of Labor was outside the statute of limitations period, "[a]ffidavits of workers whose employment falls outside the statutory period 'are probative of [an] employer's wage and hour practices and they may corroborate the claims of more recent violations." Rosario v. Valentine Ave. Disc. Store Co., 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011).

Plaintiff also contends that defendants' argument that the Court should disregard Mr. Martinez's Declaration because he is not a named plaintiff "is nonsensical." (Pl.'s Reply at 4). As plaintiff points out, it is the plaintiff's burden to establish, at a minimum, that there are other employees who are similarly situated to him in that they were subject to similar pay and schedule arrangements. Courts routinely consider the affidavit of the named plaintiff, along with affidavits of other employees, to determine if the plaintiff has made the modest factual showing necessary to demonstrate that the named plaintiff and other potential plaintiffs were victims of a common policy or plan that they allege violated the law. See, e.g., Lopez v. JVA Indus., Inc., No. 14 CV 9988, 2015 WL 5052575, at *3-4 (S.D.N.Y. Aug. 27, 2015) (holding that plaintiff's affidavit and corroborating affidavit were sufficient); see also Alcantara-Flores v. Vlad Restoration Ltd., 2017 WL 455413, at *2 (E.D.N.Y. Feb. 2, 2017) (finding that plaintiffs' own affidavits describing their personal situation plus the knowledge of other unnamed employees was sufficient for conditional certification); Hernandez v. Bare Burger Dio Inc., No. 12 CV 7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (single plaintiff's affidavit found sufficient).

The Court finds that the allegations in the Complaint and in plaintiff Tello's Declaration, which are corroborated by the Declaration of Salvador Martinez, are sufficient to satisfy the minimal showing required for conditional certification. The lawsuit alleges that defendants violated the FLSA by paying their employees a flat weekly salary and by failing to pay overtime pay for any hours worked over 40. Not only has the named plaintiff Tello presented a Declaration stating that he was subject to these pay policies, but he also observed others who worked similar schedules and were paid in the same manner. (T. Tello Decl. ¶¶ 13, 17). His Declaration is corroborated by that of Martinez, who claims he was paid the same amount every

week regardless of the number of hours he worked, and that he was not paid overtime for the hours worked over 40 in a week. (Martinez Decl. ¶ 15).

Courts have granted certification where the plaintiff can attest to knowing of and identifying similarly situated employees. See, e.g., Lewis v. Alert Ambulette Serv. Corp., No. 10 CV 442, 2012 U.S. Dist. LEXIS 6269, at *19 (E.D.N.Y. Jan. 19, 2012); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 386, n.6 (E.D.N.Y. 2010). Here, both the named plaintiff and Mr. Martinez claim to be aware, from personally speaking with and observing other employees, that there are other individuals who are similarly situated for the purposes of certification. (T. Tello Decl. ¶¶ 20, 21; Martinez Decl. ¶¶ 22-26).

The Court finds that the sworn statements in the plaintiff's Declaration, considered in conjunction with the allegations in the Complaint and the corroborating Declaration of Mr. Martinez, satisfy plaintiff's burden and provide sufficient support for plaintiff's motion for conditional certification. Given that numerous courts have granted conditional certification based on the declaration and observations of only one individual, see Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 452-53 (E.D.N.Y. 2014) (citing cases in which conditional certification was granted on the basis of one employee), here, where the plaintiff's claims are bolstered by those of another employee, the Court finds their statements alone establish a factual nexus between plaintiff and other employees. Since the Court must "draw all inferences in favor of the [p]laintiff," in considering a motion for conditional certification, Mendoza v. Ashiya Sushi 5, Inc., No. 12 CV 8629, 2013 WL 5211839, at *4-5 (S.D.N.Y. Sept. 16, 2013) (quoting Jenkins v. TJX Cos. Inc., 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)), the Court finds that the Declarations are sufficient to support the inference that there was a uniform practice or policy by the defendant of failing to pay overtime in violation of the statute. See Khamsiri v. George &

Frank's Japanese Noodle Res., Inc., No. 12 CV 265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012).  At this stage, these statements suffice to satisfy the requirement that plaintiff make a "modest factual showing" to warrant conditional certification.   Indeed, after discovery, the class of employees "may be 'de-certified' if the record reveals that they were not [similarly situated]" and defendant is able to establish that the wage violations were actually limited in scope, Agudelo v. E & D LLC, No. 12 CV 0960, 2012 WL 5426420, at *2 (S.D.N.Y. Nov. 5, 2012) (quoting Myers v. Hertz Corp., 624 F.2d at 555) (alteration in original), or that certain plaintiffs were subject to an exemption under the FLSA.

Accordingly, the Court finds that plaintiff has met the minimal burden of showing a factual nexus between the plaintiff and employees similarly situated to plaintiff who may have been victims of a common policy or practice that violated the FLSA's overtime requirements.

Therefore, plaintiff's motion for conditional certification is granted.

c. Scope of the Proposed Class

Defendants also challenge the scope of plaintiff's proposed class on the grounds that it is overbroad and includes a wide variety of employees, with different schedules, different job responsibilities and different methods and rates of pay.  (Defs.' Mem. at 16-17).  Defendants note that according to the Declaration of Francisco Tello, some employees work as "managers, line cooks, preparatory cooks, servers, counter persons, delivery employees, hosts and cashiers," with some of them being paid at lower rates because they are tipped employees.  (Id. at 17 (citing F. Tello Decl. ¶¶ 3, 9)).  Thus, defendants seek to limit the class subject to conditional certification to just counter persons and preparatory cooks.  (Id.)

Plaintiff correctly notes that courts "routinely reject attempts to limit certification based on job function." (Pl.'s Reply at 6 (quoting Mendoza v. Little Luke, Inc., No. 14 CV 3416, 2015

WL 5918580, at *3 (E.D.N.Y. Oct. 9, 2015)); see also Guaman v. 5 M Corp., No. 13 CV 3820, 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (noting that in this Circuit, courts routinely find employees who do not perform the same job functions or occupy the same positions to be similarly situated when they are subject to the same common unlawful policy or practice); Ritz v. Mike Rory Corp., No. 12 CV 367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013).

Here, not only have Mr. Martinez and the plaintiff described both tipped and non-tipped positions that were paid in the same manner, but defendants themselves have admitted that all employees were paid the same way. (See Deposition Transcript of George Rakitzis, attached as Exhibit B to the Supplemental Declaration of David Stein, Esq., dated September 15, 2017, ECF No. 38-2). It is therefore appropriate for the collective action to include all employees, regardless of their job description.

Plaintiff proposes that the class period span three years. (See, e.g., Pl.'s Mem. at 1). However, plaintiff has defined the proposed class of "Collective Action Members" differently in his Memorandum of Law and in the Notice. In his Memorandum of Law, plaintiff defines the class as "current and former employees . . . employed by [defendants] from July 14, 2014 to the date of [the motion for conditional certification"; whereas in the Notice, the class encompasses all "current and former similarly situated person[s] who worked for [defendants] in the last three years [measured from the date of the Notice]." (Compare Pl.'s Mem. at 1, with Prop. Notice at 1). The Complaint sets forth yet a different definition, for it defines the class as "[a]ll persons who are or were employed by defendants in the United States at any time since February 3, 2014 to the entry of judgment in this case, and who were not paid overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per week." (Compl. ¶ 26).

The statute of limitations for an FLSA claim is generally two years, unless there is a "willful violation," which allows for an extension of the period to three years. 29 U.S.C. § 255(a). To establish a "willful violation," plaintiff must show that the employer either knew or acted in reckless disregard as to whether its conduct was prohibited by the statute. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 130 (1988) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985)); see also Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 215 (S.D.N.Y. 2014). Plaintiff alleges in his Complaint that defendants' violations were "willful," and the Declarations he submitted tend to support those allegations. (See, e.g., Compl. ¶¶ 2, 34, 37). Accordingly, the Court finds that plaintiffs have sufficiently pleaded that defendants' actions were "willful" so as to extend the opt-in period to three years.

The statute of limitations for opt-in plaintiffs under the FLSA runs until the "date on which [their] written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256(b). Thus, "some courts in this Circuit have calculated the time period for provision of notice from three years prior to the date of the relevant order, rather than three years prior to the complaint." Sultonmurodov v. Mesivita of Long Beach, 2015 WL 5918415, at *4. However, "[b]ecause equitable tolling issues often arise for prospective plaintiffs . . . other courts in this Circuit have calculated the three-year period from the date of the complaint 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" Id. (quoting Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)); see also Fa Ting Wang v. Empire State Auto Corp., 2015 WL 4603117, at *12-13 (ordering that the notice period be calculated from the date of the filing of the complaint in light of the possibility that potential opt-in plaintiffs may have had "good faith arguments for the application of equitable tolling"); Velasquez v. Digital Page, Inc., No. 11

CV 3892, 2014 WL 2048425, at *11 (E.D.N.Y. May 19, 2014) (finding it "appropriate" for notice to be sent to potential opt-in plaintiffs employed by the defendants within three years of the filing of the complaint). Indeed, at least one court has noted that "the remedial purposes of the FLSA are best served by setting the time for both discovery and notice using the date of the filing of the Complaint." Fa Ting Wang v. Empire State Auto Corp., 2015 WL 4603117, at *13.

Given the potential for equitable tolling of opt-in plaintiffs' claims, the Court concludes it is appropriate to use the date the Complaint was filed, February 9, 2017, to calculate the date on which the collective action period begins, on the understanding that the Court will entertain challenges to the timeliness of individual plaintiffs' claims at a later date. Such a definition best serves the remedial purposes of the FLSA.

Thus, the Court approves a collective class definition that encompasses all current and former employees of Silver Spoon Diner who worked for Silver Spoon Diner at any time within three years of February 9, 2017.[12]

## B. The Proposed Notice

Plaintiff has submitted a Proposed Notice for putative class members and requests that the Court approve the Notice. (See generally Prop. Notice). He also asks that defendants provide applicable employee contact information so that the Notice can be issued to the potential

---

[12] Defendants also raise an issue as to plaintiff's ability to serve as a collective action representative, noting that during his deposition, plaintiff stated that "'this lawsuit is mine,'" and indicating that he did not wish to represent other employees in the collective action. (Defs.' Mem. at 12, n.5 (quoting Tello Tr. at 35)). Plaintiff explains that defendants omitted to cite to the page in the deposition transcript where Mr. Tello confirmed that he was willing to represent his co-workers (Tello Tr. at 146-47), and he further explains in his Declaration that he did not understand the question and thought that he was being asked if he would split his money with other employees. (T.Tello Decl. ¶ 18). He confirms in the Declaration that "I would be satisfied if other employees joined in this lawsuit." (Id.)

FLSA opt-ins.  Defendants have raised a number of objections to the Notice.  Bearing in mind that "the district court has discretion regarding the form and content of the notice," <u>In Re Penthouse Exec. Club Comp. Litig.</u>, No. 10 CV 1145, 2010, WL 4340255, at *45 (S.D.N.Y. Oct. 27, 2010), the Court addresses each of these concerns in turn.

First, defendants contend that the Notice overemphasizes plaintiff's claims and understates the defenses and thus is not "neutral" as required by the court in <u>Hoffman La-Rouche.</u>  (Defs.' Mem. at 18).  Defendants also seek to add the following language: "this notice does not mean that you are entitled to any monetary recovery.  Any such determination must still be made by the Court."  (<u>Id.</u> (citing <u>Mazur v. Olke Lejbzon & Co.</u>, No. 05 CV 2194, 2005 WL 3240472, *6 (S.D.N.Y. Nov. 30, 2005)).  As for the provision in the Notice that advises opt-in plaintiffs as to their responsibilities with respect to discovery, defendants propose that the Notice state that an individual who opts in may be asked to "(1) respond to certain questions; (2) produce documents; and/or (3) sit for depositions."  (<u>Id.</u> at 18-19 (citing <u>Hallissey v. Am. Online, Inc.</u>, No. 99 CV 3785, 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008)).  Finally, defendants oppose the request made by plaintiff to post the Notice in the restaurant as unwarranted and intrusive, particularly since defendants have agreed to the dissemination of the Notice by first class mail or email and telephone number if no address is available.  (<u>Id.</u> at 19).

In response, plaintiff notes that the Notice not only sets forth Mr. Tello's claims but it sets forth defendants' denial and it provides contact information for defendants' counsel, indicating that the employee can contact either plaintiff's counsel or defendants' counsel if they desire more information.  Although defendants complain that the Notice is not "neutral," they do not propose any modification to the language, nor do they suggest any additional wording that might supplement what is already in the Notice.  Accordingly, the Court finds that the Notice as

drafted is sufficiently neutral and provides equal access to both counsel such that it comports with the requirements of the <u>Hoffman La-Roche</u> case.

As for defendants' proposal to add language indicating that the Court has not made any determination of whether recipients are entitled to money, plaintiff points out that paragraph 2 of the Notice already says: "The lawsuit is in the discovery phase and the court has not made any rulings as to any of the parties' claims or defenses," and paragraph 3 states: "Joining this lawsuit does not mean that you necessarily are entitled to any money. The determination of whether you will be entitled to any money will be made by the judge." (Notice at 2). The Court agrees with plaintiff that this language is sufficient to alert potential opt-ins that their right to recover any money has not been determined by the Court or by a jury.

With respect to the defendants' argument that the Notice is unclear as to the obligations of the potential opt-ins, the Notice does say that opt-in plaintiffs "may be asked to give sworn testimony and information about [their] work for Silver Spoon Diner," and further instructs them to save documents. (Notice at 3-4). While the Court agrees that this language conveys the information about an opt-in plaintiff's responsibilities, it would be clearer to say: "If you join this lawsuit, you may be required to give sworn testimony and to appear for depositions. You may also be asked to produce documents and should save any documents that you may have relating to your job at Silver Spoon Diner." The Court directs counsel to make this change prior to sending out the Notice.

Finally, the Court Orders defendants to post the Notice in the restaurant. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." <u>Marin v. Apple-Metro, Inc.</u>,

2014 WL 11035376, at *10 (E.D.N.Y. July 29, 2014) (quoting <u>Whitehorn v. Wolfgang's Steakhouse, Inc.</u>, 747 F. Supp. 2d. 445, 449 (S.D.N.Y. 2011)).

<u>CONCLUSION</u>

Having reviewed the parties' submissions, the Court grants plaintiff's motion for conditional certification. The parties are directed to amend the Notice as indicated herein and mail the Notice to all potential collective action members, defined as: all current and former employees of Silver Spoon Diner who worked for Silver Spoon Diner at any time within three years of February 9, 2017. The defendants are further directed to post the Notice in the Restaurant for a period of 60 days.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      February 12, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York